IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| OREADEA TREADWELL,<br><br>    Plaintiff,<br><br>    v.<br><br>PRINCE GEORGE'S COUNTY,<br>MARYLAND et al.,<br><br>    Defendants. | Civil Action No. 8:13-cv-00063-AW |

## MEMORANDUM OPINION

Pending before the Court is Defendants' Partial Motion to Dismiss. The Court has reviewed the record and deems a hearing unnecessary. For the reasons that follow, the Court **DENIES** Defendants' Partial Motion to Dismiss.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a 42-year-old Black female. Plaintiff started working for the Health Department of Prince George's County, Maryland in January 2009. The Court refers to both the Health Department and the County interchangeably as "Department," "Defendant," or "the County." Defendant Christopher Oladipo ("Oladipo") supervised Plaintiff. Oladipo works in the Department as Program Chief.

According to Plaintiff, Oladipo started to sexually harass her almost as soon as she started working for the Department. Between January 2009 and October 2010, Oladipo subjected Plaintiff to numerous lewd remarks, sexual propositions, and other offensive conduct. Plaintiff further alleges that Oladipo would physically assault her, including in a sexual manner.

1

In March 2010, Plaintiff started repeatedly complaining about the harassment to the Department's HR office. She complained to additional Department officials throughout the spring and summer of 2010 and received little assistance. Plaintiff alleges that Oladipo's harassment picked up after these complaints and involved, among other things, snarling, screaming, and stalking. Plaintiff adds that, at one point, the Department's personnel manager suggested that she find another job.

In late June 2010, Plaintiff filed a formal complaint of discrimination with the County's Human Relations Commission (HRC). The harassment continued. Then, in mid-July 2010, Plaintiff filed criminal charges against Oladipo based on the alleged physical assaults. Around this time, Plaintiff sought and received a Peace Order against Oladipo.

In the late summer of 2010, the Department assigned Plaintiff to a different building and told Oladipo not to come into contact with her. Plaintiff alleges that Oladipo nonetheless came to the new work location at times, ostensibly to attend meetings. Plaintiff further alleges that he enlisted other persons to harass Plaintiff in his stead.

In April 2012, the HRC determined that Oladipo sexually harassed Plaintiff. Apparently, during its investigation, the HRC discovered that Oladipo had harassed other people and that someone had filed a formal charge of discrimination against him in 2008. Along these lines, Plaintiff also alleges that another Department employee filed a complaint against Oladipo in 2006 and that a different woman sought a Peace Order in 2007 to stop Oladipo from harassing her. Plaintiff adds that she never received EEO training and that, to her knowledge, the Department has not issued a formal EEO policy on sexual harassment.

In January 2013, Plaintiff filed her complaint. In late March 2013, Plaintiff filed a Second Amended Complaint, Doc. No. 28, which is the controlling pleading. On April 9, 2013, the

County filed its Partial Motion to Dismiss. Doc. No. 29. The County urges the Court to dismiss the § 1983 claim, asserting that (1) Oladipo is not a final policymaker for § 1983 purposes and (2) Plaintiff has not sufficiently plead a *Monell* claim. Plaintiff filed her Opposition on May 6, 2013. Doc. No. 35. Plaintiff states that the contention that Oladipo is not a final policymaker is off-point because Plaintiff asserts only individual-capacity § 1983 claims against Oladipo. The Court agrees and will not entertain this argument further. Plaintiff also argues that she has pleaded a facially plausible *Monell* claim. Defendant has not filed a reply brief.

**II.    STANDARD OF REVIEW**

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding a motion to dismiss, the court should first review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. In so doing, the court must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County*

3

*Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III. LEGAL ANALYSIS

"A municipality or other local government may be liable under [42 U.S.C. § 1983] if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (citation and internal quotation marks omitted). "But, under § 1983, local governments are responsible only for their own illegal acts." *Id.* (citation and internal quotation marks omitted). "They are not vicariously liable under § 1983 for their employees' actions." *Id.* (citations omitted).

"Plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury." *Id.* (citation and internal quotation marks omitted). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* (citations omitted).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating [others'] rights may rise to the level of an official government policy for purposes of § 1983." *Id.* "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citation omitted). "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* (alteration in original) (citation and internal quotation marks omitted).

4

"Only then can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983." *Id.* at 1359–60 (citation and internal quotation marks omitted).

"[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 1360 (alteration in original) (citation and internal quotation marks omitted). "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate [others'] constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* (citation omitted). "The city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution." *Id.* (citation and internal quotation marks omitted).

In this case, Plaintiff has stated a facially plausible claim that the County was deliberately indifferent to Oladipo's alleged sexual harassment. Taken as true and construed in the most favorable light, Plaintiff's allegations support the following inferences: (1) Oladipo subjected Plaintiff to severe and pervasive sexual harassment; (2) Department officials largely ignored Plaintiff's complaints about Oladipo, even telling her to find a new job when she was not to blame; (3) the County failed to implement an EEO policy on sexual harassment; (4) the County failed to train its employees regarding sexual harassment; (5) the County knew, or had reason to believe, of prior instances of sexual harassment by Oladipo. Collectively, these allegations support a plausible inference that the County knew of severe harassment by Oladipo against Plaintiff and other women and failed to stop it and/or knew that Oladipo was likely to sexually harass Department employees and took no steps to prevent this outcome. Although deliberate

indifference is a high standard, on these allegations, it is plausible that Plaintiff will uncover sufficient evidence to sustain a *Monell* claim against the County with the benefit of discovery.

**IV.     CONCLUSION**

For these reasons, the Court **DENIES** Defendants' Partial Motion to Dismiss. A separate Order follows.

|  |  |
|---|---|
| December 4, 2013 | /s/ |
| Date | Alexander Williams, Jr.<br>United States District Judge |